NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE PLASTIC SURGERY CENTER, P.A., <br><br> Plaintiff, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, *et al.*, <br><br> Defendants. | Civil Action No. 24-10217 (GC) (JTQ) <br><br> **OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Cigna Health and Life Insurance Company's Motion to Dismiss Plaintiff The Plastic Surgery Center, P.A. (TPSC)'s Complaint pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 9.) TPSC opposed and Cigna replied. (ECF Nos. 12, 13.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Cigna's Motion is **DENIED**.

**I.   BACKGROUND**

**A.   Factual Background[1]**

TPSC is a New Jersey medical practice specializing in plastic and reconstructive surgery. (ECF No. 1-1 ¶¶ 1, 4.) Cigna is a health insurance company based in Philadelphia, Pennsylvania that provides health insurance to its members, including V.P. (*Id.* ¶ 2.) After being diagnosed with

---

[1]   On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

breast cancer, V.P. required a right breast lumpectomy. (*Id.* ¶ 6.) Thus, V.P. consulted with Dr. Adam Saad, M.D., a physician-employee at TPSC, who determined that V.P. required bilateral breast reconstruction (the Surgical Procedure). (*Id.* ¶¶ 8, 10.) However, TPSC was not an in-network provider under V.P.'s health insurance plan and was "not permitted to perform the Surgical Procedure and receive payment [ ] because the Plan provided no out-of-network benefits." (*Id.* ¶¶ 11-12.)

Nevertheless, TPSC claims that "Cigna and V.P. wanted Dr. Saad to perform the Surgical Procedure." (*Id.* ¶ 13.) Cigna allegedly "began communicating" with TPSC to "secure the Surgical Procedure from TPSC that its member required." (*Id.* ¶ 14.) TPSC states that it "required a separate agreement with Cigna wherein TPSC would be compensated at an agreed-upon rate in exchange for performance of the Surgical Procedure." (*Id.* ¶ 15.) On February 16, 2023, Lauren Thedford, a TPSC employee, reached out to Cigna and offered to perform the surgery in exchange for compensation at the in-network rate. (*Id.* ¶ 16.)

On March 13, 2023, Thedford spoke with "Kerri" and "Kat," two Cigna representatives. (*Id.* ¶ 18.) During those calls, Cigna agreed to pay the in-network rate associated with four specific CPT codes, 19316-LT, 19318-RT, 14301, and 14302, in exchange for TPSC's performance of the Surgical Procedure (the Agreement). (*Id.* ¶¶ 17-19.) TPSC alleges that the Agreement also required it to forfeit its right to balance bill V.P. (*Id.* ¶ 18.) According to TPSC, the Agreement "reasonably implied" that "other CPT [c]odes may be applicable to complete the Surgical Procedure in a competent way and thus, the Agreement authorized TPSC to complete the Surgical Procedure by performing the medical procedures memorialized by these implied CPT [c]odes." (*Id.* ¶ 19.) TPSC contends that the March 13, 2023 Agreement with Cigna was in "total abrogation

2

of the terms of [V.P.'s health insurance plan] regarding which medical providers could provide medical services." (*Id*. ¶ 20.)

The following day, March 14, 2023, Dr. Saad and Megan Vanore, PA-C, performed the surgery on V.P. (*Id*. ¶ 23.) While operating, Dr. Saad and Vanore found it medically necessary to perform additional procedures associated with CPT codes 19318-82-LT and 19316-82-RT. (*Id*. ¶ 24.) These codes had not been explicitly discussed during the March 13, 2023 call between Thedford and Cigna's representatives, Kerri and Kat. (*See id*. ¶ 19.)

The day after the surgery, March 15, 2023, Cigna issued a letter to V.P., copying TPSC, advising that Cigna would provide coverage at the "in-network level for any medically necessary, covered services."[2] (ECF No. 10-1 at 3.) The letter further provided that "[w]hen we receive your medical claim(s), we'll need to make sure your health care professionals performed only services we approved. If extra services were performed that weren't medically necessary or covered by your plan, we won't be able to pay for them." (ECF No. 10-1 at 3.) Cigna cautioned that "[t]his

---

[2] Cigna attaches the March 15, 2023 letter as an exhibit to its Motion to Dismiss, along with a "Summary Plan Description" (SPD) of V.P.'s plan. (*See* ECF No. 10.) "In general, a district court considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) 'may not consider matters extraneous to the pleadings' without converting the motion into one for summary judgment. *In re Egalet Corp. Sec. Litig*., 340 F. Supp. 3d 479, 496 (E.D. Pa. 2018), *aff'd sub nom. Spizzirri v. Zyla Life Scis*., 802 F. App'x 738 (3d Cir. 2020) (quoting *In re Burlington Coat Factory Sec. Litg*., 114 F.3d 1410, 1426 (3d Cir. 1997). However, under the integral document exception, a court may take judicial notice of documents that are "[u]ndisputedly authentic documents integral to or explicitly relied upon in the complaint." *In re Egalet Corp. Sec. Litig.*, 340 F.Supp.3d 479, 496 (E.D. Pa. 2018) (citations omitted). Given the references to the March 15, 2023 letter in the Complaint, (*see, e.g*., ECF No. 1-1 ¶ 22), the Court will consider the attached letter. However, the Court will not take notice of the SPD, as there is no reliance on this document in the Complaint. *See Ass'n of N.J. Chiropractors, Inc. v. Data ISight, Inc*., Civ. No. 19-21973, 2022 WL 45141, at *3 (D.N.J. Jan. 5, 2022) ("[T]he Cigna [d]efendants ask the [c]ourt to rely on a [2019 plan document] as the basis for dismissal. . . . Although the Cigna [d]efendants argue that the 2019 plan document [ ] governs [the plaintiff's] claims, this is not pled in the [complaint]. Moreover, the 2019 plan document is not explicitly relied upon or integral to [the p]laintiff's claims. As a result, the [c]ourt will not consider the 2019 plan document at this time.").

letter isn't a guarantee that your plan will pay for the services.  You must be enrolled in the plan and eligible for benefits on the date you receive the service.  Please see your plan documents for details about your coverage." (*Id.*)

Ultimately, TPSC billed Cigna $100,498 for the Surgical Procedure.  (ECF No. 1-1 ¶ 27.)  Thus far, Cigna has paid $824.21, which TPSC contends is below the in-network rate for the CPT codes billed per the Agreement between the parties.  (*Id.* ¶¶ 28, 29.)

### B. Procedural Background

TPSC brought suit against Cigna on October 1, 2024 in the Superior Court of New Jersey, Law Division, Monmouth County.  (*See* ECF No. 1.)  The Complaint asserted three common-law claims seeking to recoup the unpaid balance of V.P.'s surgery: breach of contract (Count One), promissory estoppel (Count Two), and negligent misrepresentation (Count Three).  (*See generally id.*)  On November 1, 2024, Cigna removed the case to this Court based on diversity jurisdiction.[3] (*See id.* ¶ 16-21.)  On January 24, 2024, Cigna moved to dismiss.  (ECF No. 9.)

## II. <u>LEGAL STANDARD</u>

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clark v. Coupe*, 55

---

[3]   Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332 given there is complete diversity between the parties (TPSC is a citizen of New Jersey; Cigna is a citizen of Connecticut) and the amount in controversy exceeds $75,000.  (*See* ECF No. 1 at 4-5.)

F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim."  *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

### III.  DISCUSSION

In its Motion to Dismiss, Cigna argues that TPSC's common law claims are federally preempted under the Employee Retirement Income Security Act of 1974 (ERISA) given that the claims are premised on an alleged entitlement to benefits stemming from an ERISA-governed health benefit plan.  (ECF No. 9-1 at 7.)[4]  Alternatively, Cigna argues that the Complaint does not allege facts sufficient to state a plausible claim.  (*Id.*)  The Court addresses each argument in turn.

#### A.  ERISA Preemption

"ERISA is a 'comprehensive legislative scheme' designed to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries,' and to do so provides for a variety of standards and regulations for . . . 'welfare plans.'"  *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 449 (3d Cir. 2018) (first quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); then quoting 29 U.S.C. § 1002(1)).  These welfare plans "include[ ]

---

[4]  Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

health insurance plans, and ERISA provides employees covered by such plans with the right to sue" when necessary to obtain promised benefits. *Id.* (citations omitted).

A critical component of ERISA is section 514(a)—"a broad express preemption provision"—that says that ERISA "supersede[s] any and all State laws [and state common law claims] insofar as they may now or hereafter *relate to* any employee benefit plan." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020). (quoting 29 U.S.C. § 1144(a)) (emphasis added). The United States Supreme Court recognized that, without any limiting principles, the definition of what "relate[s] to" an ERISA-governed plan could go too far. *Id.* (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)). Applied too expansively, section 514 could not only fail to advance ERISA's core purpose—protecting plan participants and beneficiaries—but also produce unintended consequences that undermine it.[5] *See Plastic Surgery Ctr.,* 967 F.3d at 238-39.

Therefore, courts must determine whether a state law or claim impermissibly "relates to" ERISA and is preempted. *MedWell, LLC v. Cigna Corp.*, Civ. No. 20-10627, 2021 WL 2010582, at *7 (D.N.J. May 19, 2021) (citing *Plastic Surgery Ctr.*, 967 F.3d at 226, 230, 235.) In *Plastic Surgery Center v. Aetna*, the Third Circuit held that claims "relate to" ERISA plans when they impermissibly make "reference to the plans" because they (1) are "predicated on the plan or plan administration . . . or where the plan is a critical factor in establishing liability," or (2) claims

---

[5] As the Third Circuit noted in *Plastic Surgery Center v. Aetna*, extending preemption to all out-of-network providers could force them to sue the plan participant—the very individual ERISA was designed to protect—when insurers fail to pay for their services. 967 F.3d at 238-39. Such an option, the court explained, would fail to fully "compensate the harm [a provider] suffered in reliance on the insurer's promise of payment." *Id.* at 239. Moreover, suing a patient could inflict financial and reputational harm on a provider and undermine the doctor-patient relationship. *Id.*

6

"involve construction of the plan, or require interpreting the plan's terms." *Plastic Surgery Ctr.*, 967 F.3d at 230.

In *Plastic Surgery Center*, the Third Circuit applied the "reference to" test to common law claims for breach of contract, promissory estoppel, and unjust enrichment that were asserted by an out-of-network provider. *Id*. at 223. The case involved J.L. and D.W., participants in an Aetna healthcare plan who both required surgical procedures that were not available in-network. *Id*. The patients were referred to Plastic Surgery Center, an out-of-network provider who agreed to do the surgeries after confirming with Aetna that it would pay. *Id*. at 223-24. The parties subsequently entered into an oral agreement in which, "in exchange for" Plastic Surgery Center's services, Aetna would pay Plastic Surgery Center "a reasonable amount" with respect to J.L. and the "highest in-network level" with respect to D.W. *Id*. at 224. Following the procedure, Aetna allegedly "refused to live up to its end of the bargain" and only paid a fraction of the cost. *Id*.

When Plastic Surgery Center sued Aetna to recover what was bargained for, Aetna argued that Plastic Surgery Center's claims "relate[d] to" J.L. and D.W.'s ERISA-governed plan and were therefore preempted. *See id.* at 231-232. The Third Circuit disagreed, finding that Plastic Surgery Center's claims did not make impermissible "reference to" an ERISA plan given that they (1) plausibly sought to enforce obligations independent of the plan; and (2) did not require interpretation of an ERISA plan. *Id*. at 230-34.

First, the court found that the claims sufficiently alleged the existence of an agreement independent of J.L. and D.W.'s ERISA-governed plans. *Id*. at 231. This separate agreement arose "precisely because there was no coverage under the plans for services performed by an out-of-network provider." *Id*. Without this separate agreement, Aetna would have no obligation to pay Plastic Surgery Center pursuant to the terms of J.L. or D.W.'s plans. *Id*. at 232. Furthermore, the

7

Third Circuit rejected Aetna's argument that Plastic Surgery Center "agreed to be bound by all terms and conditions of the plan." *Id*. Drawing all inferences in the plaintiff's favor, the court "conclude[d] that only the amount of payment and not the scope of services was to be determined in accordance with the plan." *Id*.

Second, the court held that the claims did not require interpretation or construction of an ERISA plan sufficient to trigger preemption. *Id*. at 233. Even if there was an agreement to pay for all component services based on CPT codes defined under the patients' plans, it was "not apparent from the pleadings why more than a cursory review [of the plans]" would be required to determine "a reasonable amount" or "the highest in-network level" for each service. The Third Circuit explained that these kinds of claims that "require[ ] only a cursory examination of the plan," are "not the sort of exacting, tedious, or duplicative inquiry that the preemption doctrine intended to bar." *Id*. at 233-34 (internal citations and quotations omitted).

The court noted that it was not "suggest[ing] that out-of-network providers are categorically exempt from section 514(a), with carte blanche to file suit for services rendered to plan participants." *Id.* at 232 n.16. Rather, "[w]hether any agreement was reached with a provider, and the extent to which the terms of that agreement are so intertwined with the plan as to 'relate to' an ERISA plan, are questions that depend on the facts and circumstances of the given case." *Id.* (citation omitted).

In its Motion, Cigna argues that the allegations in the Complaint are preempted because they "relate to" V.P.'s ERISA-governed plan. (ECF No. 9-1 at 14.) It states that the terms of V.P.'s plan explicitly "allowed Cigna to authorize an out-of-network medical provider, like [TPSC], to perform a surgical procedure at the in-network rate when there was no in-network provider with the appropriate training and experience to treat the patient's condition within the patient's area."

(*Id*. at 14 (internal quotes and brackets omitted).)  This option—what Cigna calls the "gap" or "network exception policy"—flows from the four corners of V.P.'s plan, not from a freestanding agreement between the parties.  In support of its arguments, Cigna cites to the March 15, 2023 letter, which, according to Cigna, confirms that "the [S]urgical [P]rocedure was authorized in accordance with the Plan's network-exception process."  The letter also makes clear that "coverage and benefits were subject to the plan's terms," and that "payment was not guaranteed."  (*Id*.)

In response, TPSC argues that "this issue was addressed in *Plastic Surgery Center* where the court reviewed a precertification letter in conjunction with the plaintiff's claims and found it was not sufficient to preempt the claims."  (ECF No. 12 at 23-24 (citing *Plastic Surgery Ctr*., 967 F.3d at 232-33).)  In the instant case, TPSC contends that it "has not pled that the March 15 letter is its contract with Cigna.  Rather, it has pled that this letter reflected Cigna's understanding that it had agreed to compensate TPSC at the in-network rate."  (*Id*. at 24.)

### 1. *TPSC's Claims Seek to Enforce Obligations Independent of V.P.'s Plan*

Based on the allegations in the Complaint, as viewed in the light most favorable to TPSC, the Court finds that TPSC sufficiently pleads the existence of an agreement independent of V.P.'s plan.  The Complaint alleges that "TPSC was not permitted to perform the Surgical Procedure and receive payment therefor because the Plan provided no out-of-network benefits to V.P."  (ECF No.1-1 ¶ 12.)  In other words, TPSC had no obligation to provide any services to V.P. under the terms of V.P.'s plan.  In fact, TPSC states that it preemptively "required a separate agreement" with Cigna in order to agree to perform the Surgical Procedure.  (*Id*. ¶ 15.)  And, according to TPSC that agreement was reached on March 13, 2023, independent of any plan.

The Court's finding is consistent with the Third Circuit's holding in *Plastic Surgery Center*, where the court found that "the claims . . . arose precisely because there was no coverage under

9

the plans for services performed by an out-of-network provider like the Center." *Plastic Surgery Ctr.*, 967 F.3d at 231.  The Court noted that "Aetna's argument that the Center agreed to be bound by all the terms and conditions of the plan . . . is simply not apparent on the face of the pleadings." *Id*. at 232.

Cigna argues that the March 15, 2023 letter sent to V.P. is proof that the Agreement with TPSC derived from V.P.'s health insurance plan.  The March 15, 2023 letter referring to the network-exception policy, Cigna contends, is analogous to the "gap exception letter" at issue in *Peer Group for Plastic Surgery, PA v. United Healthcare Services, Inc.*, Civ. No. 23-02070, 2024 WL 1328134 (D.N.J., March 28, 2024).  Like this case, *Peer Group* involved an out-of-network provider who sought payment from an insurance carrier for surgical procedures.  *Id*. at *1.  The defendant "agreed to grant [the p]laintiff gap exceptions to treat the [p]atients and cover the surgeries performed out-of-network at the in-network benefit level."  *Id*. at *2 (internal quotations omitted).  Prior to the surgery, the defendant issued "gap exception letters" and, in reliance of the gap exception policy as stated in those letters, the plaintiff provided medical care assuming that it would be reimbursed.  *Id*.  The *Peer Group* court held that the plaintiff's common law claims were preempted, finding that, as reflected in the gap-exception letters, the agreement to pay the in-network rate coincided with the "ERISA-governed plan's network-exception process [that does] not otherwise create an independent legal duty."  *Id*. at *7.

Here, however, there are no allegations in the Complaint that TPSC relied on such a policy (as the plaintiff in *Peer Group* did) in agreeing to provide services to V.P.  *See id*. at *2 ("Prior to the procedures, [the p]laintiff alleges [the d]efendant 'agreed to grant' [the p]laintiff 'gap exceptions' to treat the [p]atients.").  To the contrary, TPSC alleges that it is the separate, independent March 13, 2023 oral Agreement that it relied on in performing the Surgical Procedure.

10

(*See* ECF No. 1-1 ¶¶ 17-20.) It was not until after the Surgical Procedure that Cigna sent the March 15, 2023 letter. (*Id.* ¶ 22.) According to TPSC, the letter was drafted without TPSC's input and for the benefit of V.P., as evidenced by the fact that it was addressed to V.P. and included statements such as "after reviewing *your* medical information . . ." and "[t]his approval . . . allows *you* to see [Dr. Saad] . . .". (*See* ECF No. 1-1 ¶ 22; ECF No. 10-1 at 2-3 (emphasis added).) TPSC contends that the letter was not fully reflective of the parties' Agreement and, at most, reflected Cigna's understanding that it had agreed to compensate TPSC at the in-network rate. (*See* ECF No. 10-1 at 2-3.)[6] In comparison to the letter at issue here, TPSC argues, the plaintiff in *Peer Group* "pled that they were owed benefits under the patient's ERISA plan and relied on the precertification letters not as evidence of an agreement, but as part of the agreement itself." (ECF No. 12 at 28); *see also MedWell*, 2021 WL 2010582, at *8 ("Whether such a contract incorporated the terms of Cigna's agreements with insured patients or entailed that [the plaintiff] be treated like an in-network provider is at best an issue of fact requiring exploration."). Therefore, while the March 15, 2023 letter contains language referring to V.P.'s ERISA-based plan, the allegations in the Complaint rely on the March 13, 2023 Agreement as the basis for payment to TPSC.

---

[6] Other cases cited by Cigna, all involving out-of-network providers seeking payment, are distinguishable as they all include patients whose health insurance plans provided some out-of-network benefits, which is not true in this case. (See ECF No. 9-1 at 18.) For example, in *Princeton Neurological Surgery, P.C. v. Aetna, Inc.*, Civ. No. 22-01414, 2023 WL 2307425, at *1 (D.N.J. Feb. 28, 2023), the plaintiff sought to recover benefits that the plaintiff alleged were owed based on the terms of the participant's insurance plan, which explicitly included coverage for out-of-network providers. Similarly, the preauthorization letter at issue in *East Coast Advanced Plastic Surgery v. Aetna Inc.*, Civ. No. 18-9429, 2019 WL 2223942, at *2 (D.N.J. May 23, 2019) stated that the patient's "plan has out-of-network benefits." The same is true in *Advanced Orthopedics & Sports Med. Inst., P.C. v. Oxford Health Ins., Inc.,* Civ. No. 21-17221, 2022 WL 1718052, at *6 (D.N.J. May 27, 2022), where "it appears that [the participant's] health benefit plan covers services rendered by out of network providers." Furthermore, *Advanced Orthopedics*, unlike *Plastic Surgery Center*, included "no allegations of oral promises to pay a certain amount." *Id*.

While Cigna's version of events may be plausible (as will be determined through discovery), "it does not render [TPSC's] inferences implausible" on a Motion to Dismiss. *Plastic Surgery Ctr.,* 967 F.3d at 233. Therefore, drawing all inferences in TPSC's favor, the Court finds that the March 13, 2023 Agreement defines the scope of Cigna's duty, and therefore TPSC has sufficiently pled the existence of an agreement separate from V.P.'s plan. The claims based on this Agreement as pled "are not for benefits due under the plans. Nor are the claims otherwise impermissibly predicated on the plan or plan administration." *Plastic Surgery Ctr.,* 967 F.3d at 233. Rather, TPSC has pled an "ad hoc arrangement[ ] in which the provider agreed to render services (which are *not* covered by the terms of the plan)." *Id*. at 229 (emphasis in original); *see also Premier Orthopaedic Assocs. of S. NJ, LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 493 (D.N.J. 2023) (finding that preemption was inappropriate because the out-of-network provider was seeking to enforce an obligation that arose from the defendant's preapproval of the surgery, which was a separate and independent obligation); *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co*., Civ. No. 21-11313, 2022 WL 111061, at *4 (D.N.J. Jan. 12, 2022) (finding that state law claims are not preempted when "[t]here [was] nothing in the [a]mended [c]omplaint to suggest that [plaintiff] agreed to incorporate the terms of [defendant's] agreements with patients[.]").

        2.    *TPSC's Claims Do Not Require Interpretation of the Plan's Terms*

As previously noted, a claim that "requires only a cursory examination of the plan" is not the kind of inquiry that the preemption doctrine intended to bar. *Plastic Surgery Ctr*., 967 F.3d at 233. Moreover, while the March 13, 2023 Agreement refers to "in-network rates," (*see, e.g*., ECF No. 1-1 ¶ 16), Cigna has not established "why more than a cursory review of [V.P.'s] plan would be required to establish . . . [the in-network rate] for each service. *Plastic Surgery Ctr*., 967 F.3d

12

at 233. As discussed in *Plastic Surgery Center*, other cases on this topic suggest that this determination "is as simple as checking the 'usual, customary, and reasonable ("UCR") rate . . . based on an industry-standard schedule' for the services in question, or reviewing the fee schedule attached to Aetna's in-network provider agreements." *Id*. (internal quotations and citations omitted). There, the Third Circuit noted that "the former would be precisely the type of 'cursory examination of the plan' that we have held does not trigger express preemption, and the latter would not require any examination of the plan, but only of the fee schedule Aetna uses with its providers." *Id*. (internal quotations and citations omitted); *see also Premier Orthopaedic*, 675 F. Supp. 3d at 493 (the "normal and reasonable rate" for surgery that the parties allegedly agreed to could be determined via a cursory review of the plan or fees schedule); *Gotham City,* 2022 WL 111061, at *4 ("Although it is true that the alleged independent agreement referred to 'out-of-network rates,' which may be defined in the patients' plans, applying such 'out-of-network rates' would require only a 'cursory examination' of the plan, not a detailed construction of its terms.") (internal citations omitted).

Thus, the Court finds that TPSC's claims, as pled, do not make an impermissible reference to V.P.'s ERISA-governed health insurance plan. Therefore, TPSC's state law claims are not expressly preempted under section 514.

### B.     Breach of Contract

To assert a claim for breach of contract, a plaintiff must demonstrate: (1) the existence of a contract between the parties; (2) a breach of that contract; (3) resulting damages; and (4) that the claimant fulfilled its own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203

(3d Cir. 2007).[7] Under New Jersey law, a valid contract requires both mutual assent and consideration. *Fletcher-Harlee Corp. v. Pote Concrete Contractors*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006), *aff'd*, 482 F.3d 247 (3d Cir. 2007) (citing *Cohn v. Fisher*, 287 A.2d 222, 224 (N.J. Super. Ct. Law Div. 1972)). Mutual assent may be inferred from a party's outward expression of intent as perceived by the other party. *Id.* at 834 (quoting *Cohn*, 287 A.2d at 225). For purposes of a motion to dismiss, it is sufficient to allege "'when the contract was entered, the parties to the contract, the essential terms of the contract, how [defendants] breached the contract,' and plaintiff's performance of their obligations." *Samra Plastic & Reconstructive Surgery v. Cigna Health & Life Ins. Co.,* Civ. No. 23-21810, 2024 WL 3568844, at *7 (D.N.J. July 29, 2024) (quoting *W.H.P.M., Inc. v. Immunostics, Inc.*, Civ. No. 18-16031, 2020 WL 359146, at *4 (D.N.J. Jan. 22, 2020)).

In its Motion to Dismiss, Cigna argues that "both the ERISA Plan itself and the [March 15, 2023 letter] made abundantly clear to TPSC that no specific payment was guaranteed." Cigna's contention, however, is inconsistent with Plaintiff's allegations and goes beyond what this Court can determine on a motion to dismiss. As previously discussed, TPSC is not seeking to enforce obligations arising under V.P.'s plan, nor will the Court consider, at this preliminary stage, the March 15, 2023 letter to be a full reflection of the parties' agreement.

The Complaint's allegations sufficiently plead the existence of a binding contract. TPSC alleges that, after a period of negotiation, it entered into an oral agreement with Cigna via two

---

[7] Because the parties do not dispute that New Jersey law governs TPSC's state law claims, the Court will accept that New Jersey law applies. *See Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 591 n.5 (D.N.J. 2016) ("Since [p]laintiffs have made their allegations under New Jersey law and both parties . . . briefed the sufficiency of the claims under New Jersey law, the Court will, for purposes of deciding the present motion to dismiss, apply New Jersey law. . . .").

phone calls on March 13, 2023. (ECF No. 1-1 ¶ 17.) The parties agreed that TPSC would be paid the in-network rate for the Surgical Procedure pursuant to specific CPT codes. (*Id*. ¶¶ 18-19.) In exchange, TPSC would perform the Surgical Procedure and forfeit their right to balance bill V.P. (*Id*. ¶ 18.) These allegations specify the date on which the contract was entered, the parties to the contract, and the essential terms of the contract. *See Gotham City,* 2022 WL 111061, at *5 (stating that "the allegation that [the out-of-network provider plaintiff] called [the insurer defendant], and the [defendant] representative agreed that [the plaintiff] would be reimbursed for the surgeries is sufficient to imply a contract"). Furthermore, TPSC alleges that it performed its duties under the contract, that Cigna breached the contract when it paid less than the in-network rate, and that TPSC suffered damages in the amount of the unpaid balance. (ECF No. 1-1 ¶ 34-36.)

Alternatively, Cigna contends that no agreement was formed because there was no "meeting of the minds" regarding a definitive price for the Surgical Procedure. (ECF No. 9-1 at 21.) The specific amount owed, Cigna avers, is an essential term necessary to the existence of a binding contract. (*Id.*) At this stage of the litigation, the Court disagrees. "[A]n agreement lacking definiteness of price . . . is not unenforceable if the parties specify a practicable method by which they can determine the amount." *Samra Plastic & Reconstructive Surgery v. Cigna Health & Life Ins. Co.*, Civ. No. 23-22521, 2024 WL 3444273, at *6 (D.N.J. July 17, 2024) (quoting *Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004)). Here, TPSC plausibly alleges that the parties agreed to the "in-network rate," which, as previously noted, can presumably be established through a cursory review of V.P.'s plan. The Court adheres to "the majority view, conforming with, if not bound by, New Jersey Supreme Court precedent, [which] reasons that the precise terms of the obligation are factual matters to be fleshed out in discovery." *MedWell, LLC,* 2021 WL 2010582, at *3; *see also Comprehensive Spine Care, P.A. v. Oxford Health Ins., Inc.*, Civ. No. 18-10036, 2018 WL 6445593,

at *5 (D.N.J. Dec. 10, 2018) (finding that the plaintiff who alleged an indefinite price term in its agreement with an insurer was "entitled to discovery to demonstrate how the parties would have understood or measured the price term in their alleged agreement"). TPSC, therefore, has stated a claim for breach of contract sufficient to survive a motion to dismiss.

### C.   Promissory Estoppel

To state a claim for promissory estoppel under New Jersey law, a plainitff must allege "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021). In the Complaint, TPSC alleges that it negotiated a promise of payment, relied on that promise when performing the Surgical Procedure, and suffered damages when Cigna only issued a small fraction of the payment. (*See* ECF No. 1-1 ¶¶ 37-44.)

Cigna objects to TPSC's promissory estoppel claim for the same reasons it sought to dismiss TPSC's breach of contract claim: *first*, the failure to allege a sum certain foreclosed the possibility of a definite promise; and *second*, the March 15, 2023 letter informed TPSC that Cigna was not guaranteeing payment and would be evaluated in accordance with the ERISA plan's terms. (*See* ECF No. 9-1 at 23-24.) The Court finds that Cigna's arguments lack merit for the same reasons the Court denied Cigna's Motion as to the breach of contract claim. Accordingly, TPSC adequately alleges a claim for promissory estoppel to survive a Motion to Dismiss.

### D.   Negligent Misrepresentation

To state a claim for negligent misrepresentation, a plaintiff must allege "an incorrect statement, negligently made and justifiably relied on, which results in economic loss." *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, Civ. No. 11-2775, 2012 WL 762498, at *11 (D.N.J. Mar. 6, 2012). Additionally, a plaintiff must show that the defendant owed it a duty of care. *Princeton Neurological Surgery, P.C. v. Horizon Blue Cross Blue Shield of N.J.*, Civ. No. A-0486-

16

22, 2024 WL 178220, at *7 (N.J. Super. Ct. App. Div. Jan. 17, 2024). "Whether a duty exists is a matter of law determined by the court after balancing several factors including the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Id*.

TPSC alleges that it reasonably relied on the March 13, 2023 Agreement, separate from the plan, and suffered economic loss when Cigna failed to pay the in-network rate as promised. Cigna argues that TPSC's claim does not identify a false statement and that "reliance on such a statement was not justified in light of the preauthorization letter's disclaimer that payment was not guaranteed and claims would be evaluated under the Plan once submitted." (ECF No. 9-1 at 25.) It is not appropriate at this stage for the Court to rule on whether the statement was indeed false or if the reliance was justified. Such merits-based arguments are more suitable for summary judgment. At this stage of the proceedings, TPSC's allegations are sufficient. *See Gotham City*, 2022 WL 111061, at *6 (finding allegation that the insurer defendant told the provider plaintiff that "it was entitled to reimbursement for the surgeries at 'out-of-network' rates," and that the statement was a misrepresentation, to be sufficient for a negligent misrepresentation claim at the motion to dismiss stage); *Plastic Surgery Ctr., LLC v. Oxford Health Ins., Inc*., Civ. No. 18-2608, 2019 WL 4750010, at *7 (D.N.J. Sept. 30, 2019) (denying the defendant's motion to dismiss negligent misrepresentation claim given that, "as a preliminary matter, it is not appropriate to assess the veracity of [the p]laintiff's factual allegations at this stage. Further, given New Jersey's broad standard for negligent omission claims, the Court does not find the addition of [the p]laintiff's fifth count clearly futile"); *see also Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 41 (D.N.J. 2020) (finding that the "reasonableness [of a party's reliance] is a factual issue . . . and ill-suited to resolution on a motion to dismiss."); *Prestige*

17

*Cap. Fin. LLC v. CVS Pharmacy, Inc.*, Civ. No. 22-735, 2022 WL 17850261, at *8 (D.N.J. Dec. 22, 2022) (denying motion to dismiss negligent misrepresentation claim because the claim's validity depended on factual issues "unsuitable for resolution on a motion to dismiss").

Additionally, Cigna states that it owes no duty of care to TPSC. In support of its position, Cigna cites *Princeton Neurological Surgery, P.C. (PNS) v. Horizon Blue Cross Blue Shield of New Jersey*, where the court held that the insurer's "'duty was to its insured beneficiaries, not [the medical provider]' when there was 'no contract' between insurer and provider." (ECF No. 9-1 at 25) (quoting *PNS*, 2024 WL 178220, at *7.) *PNS* involved an out-of-network neurological surgery center who brought a negligent misrepresentation claim against a defendant insurer after the insurer failed to pay the plaintiff for its services. *PNS*, 2024 WL 178220, at *1. The plaintiff "ha[d] no contractual fee agreement when it treat[ed] [the defendant's] beneficiaries in exchange for participating in [the defendant's] managed care network." However, prior to treating each defendant-insured patient, the plaintiff would make "insurance verification calls" to the defendant. *Id*. During each call, the plaintiff "disclosed the procedure it intended to perform and each patient's insurance information to [the defendant]." *Id*. The defendant would verify that the plaintiff was eligible for payments based on its out-of-network provider guidelines. However, the plaintiff also noted that it understood that "verification of [p]lan benefits was not . . . a guaranty of payment." *Id*. (internal citations omitted). In fact, each call included a recorded disclaimer that "representations made during the call were not a guaranty of payment." *Id*.

The Appellate Division affirmed the grant of summary judgment in favor of the insurer with respect to the negligent misrepresentation claim, finding that the insurer did not owe the plaintiff a duty of care. *Id*. at *7 (stating that the defendant's "duty was to its insured beneficiaries, not [to the plaintiff]"). The reason, the court explained, was because the defendant "had not

contract[ed] with [the plaintiff]." *Id.* The *PNS* court "recognize[d that the Third Circuit] found the opposite in [*Plastic Surgery Center*]," however, in *Plastic Surgery Center*, "the insurer and the out-of-network provider had a contract." *Id.* at *7 (citing *Plastic Surgery Ctr.*, 967 F.3d at 239).[8]

Given that TPSC has adequately pled the existence of a separate contract (the oral agreement made during the March 13, 2023 calls), the reasoning of *PNS* dictates that, based on such a contract, it is plausible that Cigna owes TPSC a duty of care. *See also Plastic Surgery Ctr., LLC v. Oxford Health Ins., Inc.*, Civ. No. 18-2608, No. 2019 WL 4750010, at *7 (D.N.J. Sept. 30, 2019) ("[A]s a preliminary matter, it is not appropriate to assess the veracity of [the p]laintiff's factual allegations at [the motion to dismiss stage]. Further, given New Jersey's broad standard for negligent omission claims, the Court does not find [the claim] clearly futile.") Accordingly, TPSC adequately alleges a claim for negligent misrepresentation for purposes of surviving a Motion to Dismiss.

## IV.  CONCLUSION

For the foregoing reasons, and other good cause shown, Cigna's Motion to Dismiss (ECF No. 9) is **DENIED.** An appropriate Order follows.

Dated: July 8, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

[8] Moreover, the panel in *PNS* noted the Third Circuit's reasoning that the failure to enforce the contract could "illegitimately supplement their provider network by making promises of payment to induce the provision of services, safe in the knowledge that those out of network would have no recourse for breach of those promises." *PNS*, 2024 WL 178220, at *7 (citing *Plastic Surgery Ctr.*, 967 F.3d at 239). The court reasoned it was "not convinced the concerns raised in *Plastic Surgery* exist here." *Id.*